Mr. Bolden. Good morning, and may it please the court, this case should be remanded because the trial court... Mr. Bolden, before you start, are you aware of this court's recent decision in HitKansu? Yes, I am, your honor. Could you explain, and I'm going to ask the same question to opposing counsel, why you didn't file a 28J letter calling our attention to it? Your honor, the reason we did not is that both parties had indicated that HitKansu was a case that could affect this decision, and both parties cited HitKansu. Of course, the trial court also relied heavily on HitKansu, and perhaps we incorrectly assumed that it was not necessary to file... You incorrectly assumed that it was not necessary to file, and you both should have done it. So let's move on. But next time, it's not an excuse that the lower court decision was at issue. You need to advise this court of pertinent decisions that come down, particularly something as central as this one. Okay, understood. I assume that your position is that HitKansu disposes of the pre-litigation conduct aspect of this, right? Yes, that is our position. And where does that leave us? What should we do now? Well, if your honor allows, I'd like to talk briefly about what HitKansu does teach, and how it directs where we should go with respect to the argument. So what HitKansu and Broad Avenue Laundry teach is... Well, I'm not sure... This decision that we're reviewing is based in large part on pre-litigation conduct. HitKansu says that's not relevant. Why do we need to talk about it anymore? Your honor, the reason we do is because both HitKansu and Broad Avenue Laundry have a two-step process for approaching these kind of questions. The first step of the process is, what is the government's position in litigation? And pre-litigation conduct doesn't play into that. But then for the second step of the process, the court has to look at whether the government's litigation position was substantially justified by the facts and law, based on relevant facts that have a nexus with the litigation position. And so given that framework, we can look at exactly how the trial court erred in this case, and what issues should be remanded back to the trial court in this case. I frankly don't understand what you're saying at all. The Court of Federal Claims relied on pre-litigation conduct. HitKansu says that's not relevant. So why don't we just move on and determine whether the other conduct would justify a fee award and a remand. Isn't that the issue? Yes, your honor. And so, and just to clarify, what the trial court found was there were four different sources of conduct which it used to formulate the government's position. The first two, which related to Lockheed's procurement conduct and the Navy's response to the administrative claim, we contend those are out under HitKansu. And so the court should... This is Judge Wallach. Sure. I want to clarify something. Would you agree that given HitKansu, if we find that the court below articulated sufficient reasons once litigation started for awarding fees that we don't have to remand? Your honor, that is the holding of HitKansu, and I would agree that the court does have that power. However, I disagree that the court should do that in this particular case. There are some great distinctions between this decision and HitKansu in that regard. I understand, but you've agreed with me on that. Yes, I have agreed with you on that. I'm not sure what the that is. I mean, you're not agreeing that this decision can be sustained based on the post-litigation conduct, right? Right. In this particular case, there are reasons to go ahead and remand the decision back down to the trial court, reasons that didn't exist in the HitKansu decision. But I'm agreeing with the principle of law that, hypothetically speaking, the court could find that the court erred as far as determining the position of the United States, but still affirm if the court holds that the trial court didn't make any factual errors or legal errors with respect to the substantial justification question. In the red brief at 47, this is Judge Wallet. FastShip views that the government never tested its liability for the action of its contractors and subcontractors, and thus the government conceded the issue. Respond to that for me, okay? Yes, absolutely, Your Honor. What FastShip is referring to here is simply that under 1498, the government has waived sovereign immunity for itself, but also for limited authorized actions by its contractors. So to the extent that Lockheed used or manufactured the patented invention without authorization, the government has assumed that liability. We do not dispute that, that's a matter of law. The conduct of the contractor is pre-litigation conduct, right? The conduct of the contractor, Your Honor, relates to the act of infringement. It's pre-litigation conduct, right? It is pre-litigation conduct, Your Honor. And why are we talking about it? Why are we talking about it? Look, a court of federal claims has discretion as to whether to award a fee. We have a decision here, which we're reviewing, which in large part is based on pre-litigation conduct. And in that respect, it has to be set aside. And I think we can't tell what the court of federal claims would have done if it could not have relied on pre-litigation conduct. So that would suggest that there has to be a remand to determine whether there's independent conduct after the litigation commenced that would justify in and of itself an award of attorney's fees. That's absolutely right, Your Honor. We've spent 10 minutes here not getting to the heart of the matter, which is your challenge to these other findings that the district, the court of federal claims made. Your Honor, I'm happy to go ahead and turn to those. So there are two sources of conduct that the court cites in its decision that do relate to litigation conduct. That's the government's non-infringement position, the government's invalidity arguments. But we contend that the- Are those the only two things that the court of federal claims relied on in awarding the fees? The only two kinds of post-litigation conduct? I thought there were other things besides those two things that you're challenging. Those are the only two broad categories, Your Honor. Now, there are specific findings within the umbrella categories of non-infringement and invalidity. And I'm happy to go ahead and address those. The court also addressed the government's position on damages and on summary judgment and found that the government's positions in both of those contexts was reasonable, but did not weigh those as strongly in light of its other sources of conduct, such as the pre-litigation conduct. Counsel. Yes. This is Judge Wallach. In the blue brief at 4748, the government argues that its use of imperial units in its interpretation of Figure 11, which is central to this, I think, was reasonable as a matter of fact. Am I correct on that? Yes, Your Honor. Didn't the government already unsuccessfully appeal this issue to this court? Your Honor, our argument is not a collateral attack or a further argument with respect to that. We've already paid the judgment. And our argument here is separate. The question for the court is whether the government's assertion of this non-infringement argument was reasonable in the first place, not whether it was correct. And we contend that argument was reasonable, especially in light of the court's prior decision in this case, where the court noted that power could be expressed in either metric or imperial units. Okay, but what's the basis for saying that Figure 11 is expressed in imperial units? You make some argument about the specification, but the specification doesn't tell us, does it, whether this is imperial or metric units, right? Right. The specification only expresses power in terms of imperial units, but it does not specify what that y-axis in Figure 11 is. And so, what we... Wait, where does the specification tell you that power is expressed in imperial units? I see other parameters in the specification, like feet being expressed in imperial units. I don't see horsepower being expressed in imperial units in the specification, clearly. Is there any such place? There is a reference, and I apologize, I don't have the column in line number, Your Honor, but it relates to a Kamiwa engine that is in horsepower. And that's a unit of horsepower, essentially. But the specification never identifies power in terms of kilowatts. And what we have put forth in our briefing is that FASTSHIP's pre-litigation documents that it submitted to the Navy show that it derived Figure 11 from Navy documents that provided power in imperial units. So, our non-infringement position of asserting imperial units was a reasonable position. Mr. Baldwin, this is Judge Chen. This document that you raised in your briefing here and in your opposition to the fee motion below, did you rely on that document during the actual infringement trial? No, we did not, Your Honor. So, I guess what I'm wondering is, how can you rely on it and use it now to justify your litigation position when you never actually used it during the litigation? Your Honor, so the trial court under its power under Rule 54B split off the issue of fees and costs and reasonableness of the government's arguments to after trial. I guess what I'm trying to understand is, it's almost like a hidden justification for your non-infringement position during the infringement trial that you're raising only for purposes of the fee motion. Your Honor, you have to understand the entire context of how this argument was first raised. The government had identified its reliance on imperial units more than 10 months before trial in its pre-trial contentions. And this is an issue that FASCIP bore the burden of proof on. There was no indication that FASCIP was going to rely on metric units to support its infringement position until the post-trial reply brief. And so, in hindsight, it would have been nice to have these documents submitted as evidence and we could have used them. But instead, we relied on the intrinsic record and we weren't able to put these documents before the court up until the time of when the reasonableness of the government's position became an issue. This is Judge Wallach. You had two experts, Dr. Stern and Mr. Blount. Did they ever address Figure 11 in their expert reports? No, Your Honor. Neither of them did. So, Your Honor, the infringement position, we think, was an abuse of discretion or the court's findings with respect to that. With respect to the government's invalidity position, the trial court also abused its discretion in holding that the government unreasonably proffered an expert with extraordinary skill. And this is Mr. Blount, as the court just referred to. This court has held that a person of ordinary skill is just a theoretical construct and extraordinary skill objections are meritless. This is the interest in Hauser and Norgren cases that we cite in our briefing. The trial court itself even appeared to share the same view, at least through trial. It denied Fashchuk's motion in limine on that basis and admitted Mr. Blount as an expert, then repeatedly cited to his testimony. The trial court may have exercised discretion in deciding not to give substantial weight to Mr. Blount's invalidity opinion, but the trial court abused its discretion in holding that Mr. Blount's extraordinary skill showed that the government should have never called him in the first place. Unless the court has further questions at this time, I'll reserve the remainder of my time for rebuttal. Well, okay, I have further questions. Go ahead. Fashchuk alleges in the red brief of 52 that they say the government's experts didn't plot power speed data onto figure 11, and that the government attorneys did it. They're making a lawyer argument and saying this is only a lawyer argument. I understand your position that it was a question of timing as far as figure 11, but how do you deal with the their position that, hey, this is only attorney argument? Your Honor, so the way that we deal with that, as you note, was that we are the party that did not bear the burden of proof. And so we were showing as a matter of the intrinsic evidence that in the lines that are drawn on figure 11 are drawn from evidence that is in the record. Ultimately, what happened is that Fashchuk responded in its post-trial reply brief with its own figure, and that is the figure that the trial court adopted and relied upon in coming to its conclusion with respect to the use of metric units for non-infringement. But yes, the figure that we provided 10 months before trial in our pre-trial brief and at post-trial was figure 11. It was drawn from evidence, but the plotting on figure 11 was done by attorneys. Then one last question. This is Judge Wallach. And that is, you know, regarding Mr. Blount and the trial court's discounting of his expertise. What Fashchuk says is that the trial court discounted his testimony because his expertise was designing a yacht and not comparable to designing a warship, not just that he was too qualified. What do you say to that? Your Honor, I think Fashchuk takes the trial court's statement out of context, but the issue of a yacht, the word yacht is not part of the claim. In fact, the claim itself just claims a vessel with certain specifications and certain characteristics. So the whole idea of a yacht, that he had designed a yacht and therefore was unqualified to be an expert, that just has no merit. It may be that, you know, a yacht has a smaller ton displacement and the patent claims do have an element, a limitation for ton displacement. But Blount explained in his testimony how ships could be scaled up. In fact, that was part of his obviousness discussion. So Blount was very much focused on the claims. He wasn't focused on any embodiment in the patent, and therefore his testimony was reasonable for the government to proffer in the first place. Okay. Thank you, Mr. Bolden. We'll give you two minutes for rebuttal. Thank you. Mr. Hogue. Thank you, Your Honor. May it please the court. I did want to start out with the Hidcansett decision. The holding in Hidcansett was that the position of the United States refers to- And I'm going to say the same thing to you that I said to government counsel. You also should have sent us a 28J letter, particularly since this decision undercut in significant part your arguments in the red brief. You're absolutely right, Your Honor. And we just blew that, and that's all there is to it. We had referred to it. We went through the oral hearing. We've read the decision, and we didn't do it. All right. Well, I appreciate that. Where does that leave us? That leaves us determining whether there are other reasons that would support an award of attorney's fees other than pre-litigation conduct, correct? That is incorrect, Your Honor. The holding in Hidcansett is that the positions in 1498 refer to the litigation positions, but the holding is that the claims court can look to the facts of the individual case, including facts that occurred pre-litigation. And if you think about it, Your Honor- Nobody's disputing that, but a lot of the decision here is based on conduct pre-litigation. That can't be considered in awarding attorney's fees under 285, right? Pre-litigation facts can be considered to the extent that conduct is a fact. Yes, it can. But almost all of the decisions- What do you mean? Wait, wait, wait. The conduct pre-litigation conduct cannot be considered as a ground for awarding fees. It may shed light on litigation conduct, but the existence of pre-litigation misconduct cannot support an award of attorney's fees under 285, right? That is correct, Your Honor. I agree with that, and that's what the decision says. But I'm here to say that the positions that are grounded on this fee award are the positions of infringement and invalidity during the litigation. And there are facts that occurred, all the facts that occurred pre-commencement bear on those two issues that are before you today. And the two issues before you today are figure 11 and Mr. Now, the judge had much more, he said that was unreasonable, that was not substantially justified. The government has just focused on figure 11. And this court has already ruled that the government's argument on figure 11 is impurity units was attorney argument. They chose to use different units. Before you get to that, how do I know that the court of federal claims would have awarded fees if it had been aware of the hit cancer decision? Because it specifically sets out in its decision things that are before commencement and things that are after commencement. And it says that, for example, in appendix 16, the government's positions after the start of litigation creates similar problems for its attempt to establish reasonable justification. And that's every position that the government had after the start of the litigation, every single position, they had no substantial reasonable justification, all of them were addressed by the judge. There's nothing left on, there's nothing on my ability. He never says that if I put to one side the pre-litigation misconduct, that these other things that happened during the litigation would be sufficient to justify to cause me to award fees, right? He didn't use those words, but his meaning is very clear that he set before and after, and he sort of knew what was going to happen. You could see that in his decision. And then he addressed that, these positions after. But what he did, Your Honor, was he addressed every single position of the government in the litigation and said it was not reasonable conduct. It was not substantially justified, every single one. This is Judge Chen. What about the 103 invalidity defense? As I understand Judge Chen's 103 defense for using an expert with extraordinary skill. Let's assume we take that away from you. Then is there anything else that really tells us that there was something unreasonable about the government's 103 defense? Well, yes. Mr. Blount's feasibility study was the issue, not his testimony. And Judge Leto's decision is on the feasibility study. Mr. Blount wrote a feasibility study in 1989, and it discussed and combined seven references. And the government said that's proof that one of ordinary skill in the art would combine those references. And that's where the disagreement came in because Mr. Blount, who wrote that article at the time, was of extraordinary ability. That was not a person of ordinary skill in the art that wrote that paper and combined those references. Right. And I'm saying, what if we take that away from you? What if we take away from you the view that relying on an expert with extraordinary skill is somehow improper? Well, if you take it away from me, then you have left that the feasibility study itself was not prior art. And that's at Appendix 171, footnote 31. The feasibility study of Mr. Blount was simply not prior art. It was confidential and was proprietary. I'm trying to this feasibility, there's something unreasonable and defective and seriously flawed with Mr. Blount's analysis. Well, he says that in the design work he was conducting was for a yacht not comparable to a larger ship. And then while working at the same time, the inventor was conducting experiments and obtaining the patents. Where in the fee decision does he say that relying on this feasibility study was unreasonable, apart from the extraordinary skill point? He says it on Appendix 17 at the bottom of the page and the design work he was conducting for a yacht not comparable to a larger ship. There's that and the fact that he also goes back and says it's proprietary design. That means that it wasn't prior art. It was confidential. And you have to understand that when this is in the context of the case, the yacht was not in the size regime and the United States Navy's position at that time and Royal Navy's position is that that ship won't scale. That design will not scale. It violates the laws of physics. It violates the square cube law. And so that's the context for that. But that report of his was not prior art. It was written by an extraordinarily skilled individual. You're saying these things, but Judge Leto didn't say. He did. I'm sorry, Your Honor, but he's talking about that in this last paragraph on Appendix Page 17, which is page 17 of his decision. Just the language, the design work he was conducting for a yacht not comparable to a yacht. All of that is that this report was not reliable. It was not substantially justified to put on a case like that for the government to say that that article. Is that what Judge Leto said at 619 or 620? 619 or 620. Well, he goes into great detail. Is that what he said? It's a yes or no question, really. I think, in fact, yes, that's exactly what he said. He went into great detail what was wrong with Mr. Blount. He said it was fatally flawed? What's that? I'm sorry. You're telling me that in the underlying decision, Judge Leto was very critical of Mr. Blount's feasibility analysis? Yes, he was. He said something very close to this being hopelessly flawed. Now I'm trying to figure out, I don't have it in front of me, where is it where it reveals and illustrates to us that, although he doesn't quite say it here, he said it there at 619-620 that this feasibility analysis never should have been put on? Well, he says it on Appendix 171. He talks about the feasibility study, but he wasn't doing the analysis of whether or not that's reasonably substantially justified in his merits decision. Well, that's exactly the point. That's exactly the point. We can't say that his fee decision was correct because he ruled against the government in the merits decision. It's a different question. Well, Your Honor, he goes and says that Mr. Blount was designing a yacht. It's not in the size regime of the claims. It was not prior art. He clearly says that. It was proprietary, and that was unreasonable in and of itself. If the court disagrees that this article was written, that one of ordinary skill in the art would combine these seven references, then yes, but the fact of the matter is it was written by an extraordinarily skilled individual who wrote that article. Why don't you address Figure 11? Figure 11, this court already ruled that the government's argument that Figure 11 is that it is in imperial units on the vertical axis was attorney argument and ruled that it is not evidence. What's wrong with attorney argument if it's based on the intrinsic record? It's not based on the intrinsic record. There's nothing in the intrinsic record that says that units on the vertical axis are imperial units. In fact, a scientist, an engineer looking at that knows that that is in metric units. That's first. Secondly, if you actually try and plot the ship, the LCS-1 that has 108,000 horsepower and is certified to 49,000- Is the patent specification silent as to imperial units? It never invokes imperial units in any context? No, it is silent on the vertical units. It is silent because it doesn't say imperial units. It doesn't use imperial units anywhere in the specification? I'm sure it does sometimes, Your Honor, but the fact of the matter is there are seven types of units or more for horsepower and naval architects use all of them depending on what they're talking about. A naval architect looking at Figure 11 knows that that's in metric units. I understand that the patent for some things speaks in terms of imperial units and for this vertical axis, it's using kilowatts. Is that right? That's correct, Your Honor. So it's not a cleanly uniform usage of one particular kind of unit? Correct, Your Honor. It depends on what the naval architect's formulas are. They are engineers and they use all these different units interchangeably depending on what the formula is, but that graph is clearly in metric units to a naval architect. But it doesn't say so in the specification, right? But it's speaking to naval architecture, Your Honor. Don't interrupt. It says it doesn't say that it's in metric units and other measurements in the specification such as feet is in imperial units, correct? Yes. Well, so why is it so unreasonable to interpret the specification as being consistent in using imperial units for horsepower as well as other metrics? Because it's absurd. You cannot graph the imperial units of the LCS-1 on that graph that the government is purporting to do. It's factually impossible. That's why it's absurd. Well, that's what you're saying. Where does Judge Letow say it's absurd? He says it on appendix page 117, and he says it in the last second paragraph, end of the last paragraph, the government through its erroneous analysis was essentially arguing that the design it chose for its efficiency was in fact not efficient. And that's... But that's the merits decision. Where does he say... That's the fee decision. Where does he say in the fees decision that the government's position is absurd? That is the fee decision, Your Honor. It's appendix page 17, second paragraph. That's the fee decision. 17? Yes, Your Honor. Well, it just talks about it being an erroneous analysis, right? It doesn't say it's absurd. He says that the government was arguing that the design it chose for efficiency was in fact not efficient. That is what I am interpreting as absurd, and it is absurd. It's a factually impossible graph that the government did. Its attorney argument wasn't evidence. It's up against the inventor's testimony who conducted the experiments that said that graph is in metric units, and that's the evidence. They want to mount and continue to argue that they're rational in saying that their attorney argument outweighs unrefuted testimony. There was any testing or contradiction of that testimony that the units are in metric units. If my colleagues have any further questions, I think we're out of time. Thank you, Your Honor. Thank you, Mr. Hogue. Mr. Bolden, you have two minutes. Yes, thank you, Your Honor. I'll use my time to briefly address a few points. FASCIP's attorney claims that the trial court addressed every issue and found them all unreasonable on behalf of the government. I direct the court's attention to appendix 217, which is page 722 of FASCIP 5, and there the court finds that the government's position on damages and the government's position for summary judgment were reasonable but held that, and I quote this from the opinion, that does not change the fact that the positions it took with regards to infringement from the conduct of Lockheed Martin through trial were unreasonable. So there were positions that the court found to be reasonable but just weighted them less strongly in light of some of the pre-litigation sources of conduct. That's error. FASCIP's attorney also claims that Blunt's testimony was error because it will not scale. The court should take a look at appendix 7682 and appendix 7018. There's testimony from both Blunt and the patentee explaining that scaling is something that can be done by a person of skilled art. Finally, FASCIP's attorney claims that scientists and engineers know that where one of FASCIP's experts assumed and believed that the patent was an imperial and thus changed his testimony to use imperial units. Other than that, for those reasons, the court should vacate the trial court's judgment and remand it to properly consider whether the position of the United States was substantially justified in this action. Thank you. All right. Thank you, Mr. Bolden. Thank you, Mr. Hough. Case is submitted.